DAVID L. PAYNE

31896 Corte Mendoza

CELL: (951) 551-7131

Temecula, Ca 92592

Plaintiff, In Pro Per

EMAIL: dpayne55@yahoo.com

no fax

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ED CV 13 - 00044 VAP SPx

| | |
|---|---|
| **DAVID L. PAYNE, as** | Case No. |
| **Plaintiff,** | Hon. |
| **vs.** | Courtroom: |
| **WELLS FARGO BANK N.A.; NDEX WEST, LLC.; and DOES 1THROUGH 10 INCLUSIVE,** | **PLAINTIFFS' COMPLAINT FOR VIOLATION OF FEDERAL LAWS** |
| | 1.  **DECLARATORY RELIEF TITLE** [28 U.S.C.§§ 2201,2202] |
| **Defendants,** | 2.  **NEGLIGENCE** |
| | 3.  **QUASI CONTRACT** |
| | 4.  **"RESPA" VIOLATION OF** [12 U.S.C. § 2605] |
| | 5.  **Violation of Title "FDCPA"** [15 U.S.C. §§ 1692 et seq.] |
| | 6. **Violation of CALIFORNIA BUSINESS AND PROFESSIONS** [CODE § 17200, et seq.] |
| | <u>**Jury Trial Demanded**</u> |

FEE PAID

## **TABLE OF CONTENTS**

**I.** JURISDICTION, VENUE ...........................................……………..3

**II.** THE PARTIES ..........................................................................3

**III.** GENERAL FACTUAL ALLEGATIONS ............................................4

**IV.** INTRODUCTION ......................................................................5

**V.** EVENTS LEADING TO THE LEGAL ACTION AND PLAINTIFFS'
EFFORTS IN  CURING THE DEFAULT....................................................12

**VI**: PLAINTIFF HAS SUFFERED................................................14

FIRST CAUSE OF ACTION-DECLARATORY RELIEF..........................17

SECOND CAUSE OF ACTION-NEGLIGENCE.........................................19

THIRD CAUSE OF ACTION-QUASI CONTRACT...................................20

FOURTH CAUSE OF ACTION.................................................................21

FIFTH CAUSE OF ACTION.....................................................................23

SIXTH CAUSE OF ACTION.....................................................................24

PRAYS FOR RELIEF...............................................................................26

DEMAND FOR A JURY TRIAL................................................................28

VERIFICATIONS.....................................................................................29

## I.  JURISDICTION AND VENUE

1.  This court has jurisdiction over this action pursuant to Title [28 U.S.C. § 1332] which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00, Title [28 U.S.C §1331,2201, 2202] ,[Title 12 U.S.C § 2605],   Fair Debt Collection Practices Act [15 U.S.C. § 1692-1692p & Title 8 U.S.C. § 802 et seq.].  The Defendants and each of them have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, in connection with the transactions, acts, practices and courses of business alleged in this complaint and as such Plaintiff have been aggrieved, or legally harmed by the Defendant's actions.

2.  Venue is proper in this district pursuant to[15 U.S.C § 1681p] ,and [28 U.S.C § 1392] as the action involves real property and because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal laws occurred within this district.

## II. THE PARTIES

3.  PLAINTIFF, DAVID L. PAYNE, at all times herein relevant to the complaint is the owner of real property commonly known as 31896 Corte Mendoza, Temecula, Ca 92592. ("Plaintiff")

4.  DEFENDANT, WELLS FARGO BANK N.A. ( hereafter; WELLS), a Federally Chartered Bank; doing business in California as a member of the National Association of Banks ("Servicer , Debt Collector & alleged creditor of the alleged debt").

5.  DEFENDANT, NDEX WEST LLC. ( hereafter; NDEX);   a Delaware Corporation; the alleged Trustee of the Deed of Trust . ("Debt Collector and alleged Trustee of the Deed of Trust") also referred to as the ("Contract").

6.  DOES 1 THROUGH 10 INCLUSIVE, Plaintiff does not know the true names and nature of  Defendants DOES 1 THROUGH 10 INCLUSIVE, and will amend this complaint when their true identities have been ascertained according to proof at trial.

7. Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that such Defendant acted individually and jointly with the other Defendants.

8. Any allegation about acts of any corporate or other business means that the corporation or other business did the acts alleged through officers, directors, employees, agents and /or representatives while they were acting within the actual or ostensible scope of their authority.

9. At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

10. At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this complaint. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

### III: GENERAL FACTUAL ALLEGATIONS

11. The Plaintiff is informed and believes and alleges thereon that Defendants are third party strangers to his alleged debt and mortgage and have no ownership interest entitling them to collect payment or declare a default. In fact; Defendant WELLS is merely a Servicer and Collector and Defendant NDEX is acting and collaborating as the alleged trustee of Deed of Trust for the purpose of collection. Plaintiff is informed and now alleges that Defendants are designated financial agents of the United states Treasury acting as collectors under the guise of authority assigned to them by the United States Treasury without conducting their proper due diligence as prescribed by the United States Treasury guidelines. Plaintiff also alleges that Defendants have been engaged in an elaborate business practice to deceive, misrepresent and have schemed to commit fraud and other acts of fraud against the Plaintiff in order to collect on

alleged debts; Defendants have resorted to "papering the file" by fabricating and filing an "Substitution of Trustee and Assignment of Deed of Trust", employing individuals who have no authority or personal knowledge of the facts to which they attest, and falsely representing to Plaintiff and the court that they have the right to take the Plaintiff real property away. Plaintiff is informed and alleges that Defendants have intentionally setup procedures which has used enticement and promises of assistance to the Plaintiff and other borrowers to enable a systematic default of loans and disposition of the real property for the intentional purpose of foreclosing on Real properties in order to collect fees which equal ($.45) forty five cents or more on each dollar or 45% of all amounts collected through the liquidation of the Real Property.

Through this action, Plaintiff seeks to stop Defendants fraudulent practices, discover the reasons why Defendants have not offered any assistance to the Plaintiff after the Plaintiff had become delinquent and was qualified for assistance per the Economic Stability Act of 2008 as stipulated by their contract with the United States Treasury as a designated financial agent.

## IV. INTRODUCTION

12. During the high times of the mortgage refinancing and mortgage origination era 2002-2007 lenders became exposed to mass amounts of Risk in the United States.

13. As Wall Street entities rushed to "Securitize" the toxic loans and their anticipation of the massive number of defaults that were to come in the form of toxic assets, they also placed bets accordingly and bought exotic insurance products in the form of Credit Default Swaps[1]. The eventual meltdown of the market provided Wall Street with even more ridiculous profits.

14. As March of 2007 approached the market witnessed the beginning of the meltdown and the fall of one of the most historical and powerful players in wall street; Bear Stearns

---

[1] In 1995, JPMorgan credit the Credit Debt Swap (CDS), essentially, a CDS is a form of insurance intended to protect the buyer of the policy in the case the borrower defaults on the loan. If the borrower defaults, the buyer of the CDS receives a large payout for the cash value of the defaulted loan. The main difference between traditional insurance policy and a CDS is that anyone can purchase a CDS; even those who have no direct "insurable interest" in the lender. CDSs' were instrumental during the housing bubble because once the banks ran out of creditworthy borrowers; they had to run to un-creditworthy subprime borrowers. To avoid losses from defaults, the banks moved these risky mortgages off their books by bundling them into "securities" and selling them to investors. The CDS market is the only major financial sector of the market that is not governed by any rules, Due to this sector the estimated exposure to losses is in the Trillions for the taxpayers.

became the first major player to file for Bankruptcy protection as its toxic assets began to unravel.

15. By June 2007; the Mortgage market had started a nose dive and investors had began exiting the mortgage bond sector.  Soon after Bear Stearns fell other major houses on wall street began to collapse , Merrill Lynch was about to face the same faith as Bear Stearns, but their brokerage operations were an attractive target for bigger players and eventually they were taken over by Bank of America N.A. for stock options, and Citigroup was  forced to shut down their mortgage division and to cut thousands of jobs.

16. As 2008 started it was clear that the mortgage sector and the mortgage backed securities had infected the overall market and had caused the volatile economic environment facing the nation and the world.

17. The last straw to brake the economy was the collapse of Lehman Brothers Holdings and the filing for bankruptcy protection for one of the country's oldest financial institutions and most revered members of the banking fraternity.  This was a clear message to the investors around the globe that the end game for the Unites States real estate / mortgage sector and mortgage backed securities was now upon us.  Lehman's bankruptcy was the largest failure of an investment bank since Drexel Burnham Lambert collapsed amid fraud allegations 18 years prior. Immediately following the bankruptcy filing, an already distressed financial market began a period of extreme volatility, during which the Dow experienced its largest one day point loss, largest intra-day range (more than 1,000 points) and largest daily point gain. What followed was what many have called the "perfect storm" of economic distress factors and eventually a $700bn bailout package (**Troubled Asset Relief Program**) prepared by Henry Paulson, Secretary of the Treasury, and approved by Congress. The Dow eventually closed at a new six-year low of 7,552.29 on November 20, followed by a further drop to 6626 by March of the next year. Durvexity spiked, due to funding issues at the major investment banks.

18. The **Emergency Economic Stabilization Act of 2008** (Division A of Pub.L. 110-343, 122 Stat. 3765, enacted October 3, 2008), commonly referred to as a bailout of the U.S. financial system, is a law enacted in response to the subprime mortgage crisis authorizing the

United States Secretary of the Treasury to spend up to $700 billion to purchase distressed assets, especially mortgage-backed securities, and supply cash directly to banks. The funds for purchase of distressed assets were mostly redirected to inject capital into banks and other financial institutions while the Treasury continued to examine the usefulness of targeted asset purchases. Both foreign and domestic banks are included in the program.  The Act was proposed by Treasury Secretary Henry Paulson during the global financial crisis of 2008.

19.   The original proposal was submitted to the United States House of Representatives, with the purpose of purchasing bad assets, reducing uncertainty regarding the worth of the remaining assets, and restoring confidence in the credit markets.  The bill was then expanded and put forth as an amendment to H.R. 3997. The amendment was rejected via a vote of the House of Representatives on September 29, 2008, voting 205–228.   On October 1, 2008, the Senate debated and voted on an amendment to H.R. 1424, which substituted a newly revised version of the **Emergency Economic Stabilization Act of 2008** for the language of H.R. 1424.  The Senate accepted the amendment and passed the entire amended bill, voting 74–25.   Additional unrelated provisions added an estimated $150 billion to the cost of the package and increased the length of the bill to 451 pages. (*See* Public Law 110-343 for details on the added provisions.) The amended version of H.R. 1424 was sent to the House for consideration, and on October 3, the House voted 263–171 to enact the bill into law.  President George W. Bush signed the bill into law within hours of its congressional enactment, creating the $700 billion **Troubled Asset Relief Program (TARP)** to purchase failing bank assets (Countrywide bank).  TARP was dwarfed by other guarantees and lending limits; analysis by Bloomberg found the Federal Reserve had, by March 2009, committed $7.77 trillion to rescuing the financial system, more than half the value of everything produced in the U.S. that year.

20. The Purpose of the Act Sec. 5201. The purposes of this chapter are—

(1)  to immediately provide authority and facilities that the Secretary of the Treasury can use to restore liquidity and stability to the financial system of the United States; and

(2)  to ensure that such authority and such facilities are used in a manner that—

(A)  protects home values, college funds, retirement accounts, and life savings;

(B) **preserves homeownership** and promotes jobs and economic growth;

(C) **maximizes overall returns to the taxpayers of the United States**; and

(D) **provides public accountability for the exercise of such authority**.

21.   Sec. 5202. _Definitions_ ;  The term "troubled assets" means—

(A) **residential or commercial mortgages and any securities**, obligations, or other instruments that are based on or related to such mortgages, that in each case was originated or issued on or before March 14, 2008 **(Plaintiff's Loan was originated well before this date)**, the purchase of which the Secretary determines promotes financial market stability; and

(B)  any other financial instrument that the Secretary, after consultation with the Chairman of the  Board of Governors of the Federal Reserve System, determines the purchase of which is necessary to promote financial market stability,  but only upon transmittal of such determination, in writing, to the appropriate  committees of Congress.

22.   Sec. 5219. Foreclosure mitigation efforts                                      (a)

**Residential mortgage loan servicing standards**

(1)

In general

To the extent that the Secretary acquires **mortgages**, **mortgage backed securities**, and other assets secured by residential real estate, including multifamily housing, the Secretary shall implement a plan that seeks to maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program under section 1715z–23 of this title or other available programs to minimize foreclosures.  In addition, the Secretary may use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures.

23.   As of December of 2008 Defendant Wells took on the liability of Wachovia Bank and the responsibility of the collection of their debt along with Government subsidies for losses.

24.   Here, Plaintiff alleges that the "true sale" of Wachovia assets to Defendant Wells never took place and thereby, Defendant Wells did not acquire any legal, equitable, and

1  pecuniary interest in the Plaintiff's Note and Mortgage.  As a result, thereof, Wells which

2  purports to be the Plaintiffs' creditor, actually has no secured or unsecured right, title, or interest

3  in the Plaintiffs' Note and Mortgage, and has no right to report derogatorily against the

4  Plaintiffs' credit, or to default the Plaintiff, Plaintiff re-alleges that Wells' role is a Servicer

5  which became  a collector per their contracts with the department of treasury.

6       25.  Despite the procedural requirements and the rules governing the proper compliance

7  of such transactions, Defendants attempt to take advantage of the complex structured financial

8  system to defraud the Plaintiff as they have done with millions of other homeowners from the

9  inception of the meltdown.  Plaintiff anticipates that Defendants and their counsel will seek a

10  Court-sanctioned bailout by submitting a blatantly fabricated "Assignment" and a Deed of Trust

11  accompanied with the Original Note that does not show the name of  Defendant Wells the

12  purported creditor and assignee of the debt via a Request for Judicial Notice;  as a matter of fact

13  Defendant Wells  **_cannot_** prove or show an original receipt from the original lender that they

14  purportedly assigned the alleged debt,  thereby committing fraud on the court, and attempting to

15  further mislead Plaintiff that Defendants Wells and NDEX are actual creditors, and are entitled

16  to enforce their alleged obligation.

17       26.  The Plaintiff **_does not dispute_** that they owe an amount on their alleged Mortgage

18  obligation[2].  Rather, Plaintiff disputes Defendants alleged claim as being the creditor of the

19  alleged debt and their right to disposes the real property for liquidation without complying with

20  the required perimeters set forth by the United States Treasury to offer a loan modification to

21  Plaintiff and seeks the Court's assistance in determining specifically what rights, if any , the

22  Defendants have to claim a secured or unsecured interest in the Plaintiff alleged Note or alleged

23  Mortgage.

24       27.  Plaintiff is informed and alleges that the Defendants are not the true beneficial parties

25  in interest in the alleged debt and alleged mortgage.  Defendants have assumed the collection of

26  the alleged debt on behalf of the United States Treasury as designated financial agents;  Plaintiff

---

27  [2] However, simply because Plaintiffs do not dispute this fact, the court should not condone Wells Fargo, and
28  NDEXs' , fraudulent behavior and predatory mortgage collection practices and allow it to collect on money it was
not owed. Simply put, the court should not allow the defendants to trample over 200 years of well-settled property
laws just because the "owes somebody money."

1   is informed and alleges that Defendants are attempting to collect this debt and others on behalf of

2   the Department of Treasury for a fee or compensation as financial agents designated for the

3   collection of the alleged debt.  The Plaintiff now re-alleges that Defendants are debt collectors

4   under the meaning of "debt collector" as stipulated by the "F.D.C.P.A" 15 U.S.C. § 1692 (a)(6);

5   Defendants are not the originators of the alleged debt and did not service the debt as the

6   originators of the alleged debt;  Defendants also fall within the meaning the *"F.D.C.P.A"*

7   collecting alleged debts at the time the alleged debts were in default,  this fact can be confirmed

8   by the Notice of Default filed by Wachovia in 2008 as the original lender and nominee of the

9   lender and beneficiary.

10       28.  On or about July 5, 2006, Plaintiff executed a Note and Mortgage in favor of World

11   Savings Bank FSB,(hereafter "World" obtaining an alleged loan on the property located at

12   31896 Corte Mendoza, Temecula, Ca 92592-3528 ; World Savings Bank FSB., was named on

13   the Deed of Trust as the purported "beneficiary" and Golden West savings Association Service

14   Co. was named as the "trustee" of the Deed of Trust.

15       29.  Plaintiff is informed and alleges that Countrywide Bank never sold, transferred , or

16   granted their Note or Mortgage to the sponsor, depositor, or Wachovia or Wells and that

17   Wachovia, Wells, and NDEX are merely third - party stranger to the alleged debt / mortgage

18   "the Loan" transaction.

19       30.  Furthermore, Plaintiff alleges that none of the Defendants or Doe Defendants can

20   demonstrate or document that Plaintiffs' Note was ever endorsed, and transferred to Wachovia,

21   Wells or NDEX prior to the filing of this complaint.   In addition, Defendants did not provide a

22   *"__Notice of New Creditor__"* to the Plaintiff within  30 days after the purported debt had been

23   allegedly assigned or transferred to a third party[3] as required by [15U.S.C.§1641].   Although

24   this information should be readily available to any mortgage *servicer or assignee*, Wells has

25   failed to provide any evidence to verify the owner and amount of the Plaintiffs' Mortgage or

---

[3] [15 U.S.C. § 1641] the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of
such transfer, including- (A) the identity, address, telephone number of the new creditor (B) the date of the transfer
(C) how to reach an agent or party having authority to act on behalf of the new creditor (D) the location of the place
where transfer of ownership of the debt is recorded; and (E)any other relevant information regarding the new
creditor.

1  validate the claim to Plaintiffs' debt obligation.  In fact;  Defendant Wells has responded to a

2  debt validation and confirmation request prepared by the Plaintiff with a statement which clearly

3  invites the Plaintiff to file a legal action in order to view requested documents.

4       31.  The Plaintiff does not allege or assert that they are the beneficiary of the alleged

5  debt.  Rather, Plaintiff alleges that the failure to record a real assignment of their Note makes it

6  impossible for Wells or NDEX  to claim, allege or assert that it was assigned, transferred or

7  granted Plaintiffs' Note or Mortgage, or any interest therein, in any manner whatsoever.  Plaintiff

8  also alleges that the failure to legally and properly assign their Note and mortgage has resulted in

9  an unperfected lien that Defendants cannot enforce in any manner whatsoever[4].

10       32.  Plaintiff now re-alleges that Defendants Wells and NDEX are not beneficiaries of the

11  Plaintiff's Note and Grant Deed; rather, they have a Servicer and Debt Collector relationship with

12  the Plaintiff .  Plaintiff re-alleges that Defendant Wells was hired as a designated financial agent

13  by the Department of Treasury ( hereafter; DOT) to Service and Collect on behalf of the DOT on

14  mortgages that were acquired by the Department as toxic assets which were originated through

15  World savings Bank, FSB. Plaintiff also re-alleges that NDEX is an affiliate of Wells which is

16  acting as the trustee of the Deed of Trust in order to collect on behalf of Wells.  Plaintiff is

17  informed and alleges that Wells and NDEX did not follow the procedures set forth by the

18  Department of Treasury in order to mitigate the foreclosure process in the prescribed manner that

19  would benefit the tax payers **(investors of the troubled asset relief program)** and Defendants

20  have violated their agreement to conduct their due diligence on the Plaintiff's mortgage.  In

21  addition;  Plaintiff relied on Wells Fargo Banks' misrepresentation and has been damaged in the

22  following ways: (1)  multiple parties may seek to enforce their alleged debt obligation against

23  them;  (2)  the title to his home has been clouded and rendered unmarketable (unless more

24

---

25  [4]  These allegations are identical to those brought by the Nevada Attorney General against Bank of America, BAC
Home Loan Servicing, and RECONTRUST, in which Attorney General Catherine Cortez Masto alleges that these

26  entities engaged in unlawful and deceptive practices by misrepresenting to homeowners that they had the authority
to foreclose despite the fact that there were fatal deficiencies in transfers to the securitization Trusts, State of *Nevada*

27  *vs. Bank of America et  al.*, No.3:11-ev-00135-RJD,(C.D. New August 30,2011). The AG concludes that, "[t]hese
are mere technicalities. The PSA's spelled out specific procedures in order to ensure a proper transfer, protect the

28  Trusts as the holders in due course, and avoid subjecting the Trusts to taxation. In addition, borrowers need to know
the actual holders of their mortgages so that, for example, they can investigate and assert available defenses in
foreclosures, including that the agent of the trustee lacks authority or standing under the Note."*Id* at ¶ 146.

fraudulent actions are taken to show the foreclosure proceedings as proper and legal), as any would be buyer of the Plaintiffs' property will find themselves in legal limbo, unable to know with any certainty whether they can safely buy the Plaintiffs' property or get title insurance; (3) Plaintiff's property is now in foreclosure after Plaintiff was told that he has to repair the property after a flood to become eligible to receive assistance from the purported Servicer Wells; (5) Plaintiff became late and their credit worthiness has been destroyed due to the Defendants misreporting of alleged debts without proper standing (6) Defendant Wells intentionally did not qualify and offer Plaintiff a loan modification after the repair of the Property in order to be unjustly enriched through the disposition of the Plaintiffs' property through the liquidation Process; Defendant Wells would receive $.45 of every dollar or 45% of amounts recovered through the foreclosure and liquidation process and Defendant NDEX would receive their compensation without question.

33. In addition to seeking compensatory, consequential, punitive, and other damages, Plaintiff seeks Declaratory Relief as to whether the Deed of Trust (Mortgage) secures any, obligation of the Plaintiff in favor of Defendants Wells, or NDEX, such that any of them can collect Plaintiffs' mortgage payments, demand payment or engage in debt collection activities. Lastly, Plaintiff seeks Declaratory Relief as to whether the Defendant Wells has conducted their due diligence per the requirements set forth by the Department of Treasury in order to qualify Plaintiff for his Loan Modification.

## V: EVENTS LEADING TO THE LEGAL ACTION AND PLAINTIFFS' EFFORTS IN CURING THE DEFAULT

34. On or about June 2007, Plaintiff came into financial hardship due to the economic collapse of the mortgage business; Plaintiff inquired about assistance available for homeowners from the purported servicer at the time World Savings Bank FSB,. The Plaintiff was told that he could not be helped until he was 60 days late.

35. On or about September 2007, Plaintiff being delinquent received a Notice of Default from the Purported Servicer at the time World Savings bank FSB.

36.  On or about November 2007 Wachovia Bank FSB., purchased the Branches of World savings Bank FSB., to expand their banking business into the West Coast. Plaintiff is informed and alleges that Wachovia Bank only acquired the branches of World Savings and the rights to service the Mortgage portfolio that had been originated by World Savings prior to the acquisition of World Savings by Wachovia.  Plaintiff now re-alleges that there was never a True Sale of Mortgages or mortgage backed securities from World Savings to Wachovia; and at the time of Servicing transfer of the alleged debts there were no disclosures sent to the Plaintiff showing the new Servicer.

37.  In early 2008, Plaintiff initiated contact with the purported servicer at the time Wachovia Bank in an attempt to obtain a loan modification which was rejected without any explanation.

38.  On or about 2009, Wells Fargo Bank acquired Wachovia Banks operations giving them the needed presence in the South and East Coast of United States.

39.  On or about June 2009 Plaintiff received a trial modification from Wells Fargo as the purported Servicer and Collector.  Plaintiff continued to pay on his trial modification .

40.  On or about June 2011, Plaintiffs' property suffered a major flood that caused the Plaintiff and his family to move out for four months for repairs which were paid for by the Plaintiff before being reimbursed through borrowed money from family and friends.  This flood also caused a major drain on the family finances and caused Plaintiff to fall behind on his mortgage payments.

41.  On or about November  2011, Defendants Wells and NDEX WEST served Plaintiff with a Notice of Default only 7 days after the Property's repairs had been completed.  The amount of default at this time was $8229.00 on 11-29-2011; an amount that could have easily been placed in a forbearance or added to the principle of the loan; instead the servicer Wells opted to file a Notice of Default on a newly completed property.  Plaintiff alleges that Defendant Wells moved to foreclose on the property to be rewarded as a collector which would collect 45% of fees collected through the disposition and liquidation of the Real Property without any consideration for Plaintiffs circumstances.

42. On or about February 2012, a Notice of Trustee Sale was filed by the purported Trustee / Collector NDEX WEST.

43. On or about March 2012, Plaintiff petitioned for bankruptcy protection which is still ongoing.

44. Plaintiff now re-alleges that Defendants Wells Fargo Bank and NDEX have no right to collect on the alleged debts without fulfilling their obligations on performing the needed due diligence as required per the United States Treasury guidelines; in fact Wells and NDEX are collectors and have violated the law by not disclosing their true role as debt collectors , instead they have deceived the Plaintiff into believing that they have the right to deny Plaintiff on his request for a true loan modification.

45. On or about November, 2009 Wells Fargo Bank N.A., started to communicate with Plaintiff as the new purported servicer of the loan; Wells contacted Plaintiff in an attempt to collect on the delinquent amounts due from the period of 2007- 2008;  and as such Defendant attempted to collect a debt from Plaintiff after the debt had been in default and recorded with the los Angeles county recorder's office as of September 2007.  In addition the Defendants never provided the Plaintiff with the required disclosures pursuant to [15 U.S.C § 1641] showing proof that they are the new owners or assignees of the alleged debt;  Plaintiff re-alleges that Defendants Wells and NDEX are third party collectors and have no interest in the purported debt and as such do not have the right to collect or to foreclose on the Plaintiffs' mortgage.

## VI : PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER SIGNIFICANT MONETERY, LEGAL, AND EQUITABLE DAMAGES

46. The conduct described above by Wells and NDEX Company N.A. is/ was malicious because Defendants knew that they were not acting on behalf of the current beneficiary with the pecuniary interest of the Note and Mortgage.  However, despite such knowledge, said Defendants continued to demand and collect Plaintiff's mortgage payments.

47. Defendants engaged and are engaging in a pattern of defrauding Plaintiff and others, in that, on information and belief, during the entire life of the mortgage loan, Defendants failed to properly conduct the due diligence needed for a Loan modification, incorrectly calculated the

Net Present Value, and failed to accurately calculate and process Plaintiff's modification application.

48. On information and belief, at all times material, Wells had and has knowledge that Plaintiffs' application for modification was not accurately processed.

49. On information and belief, Plaintiff stopped making payments based on the improper, inaccurate, and Defendants' fraudulent representations as to Plaintiffs' ability to get the assistance needed for a loan modification.

50. As a direct and proximate result of the actions of Defendants set forth above, Plaintiffs' financial interest in the Real Property has been jeopardized.

51. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs' credit and credit score have been severely damaged.  Specifically, because of the derogatory credit reporting on their credit report by Wells , Plaintiff is unable to make use of their credit worthiness and to obtain any credit.

52. As a direct and proximate result of the actions of the Defendants set forth above, the title to the Plaintiffs' property has been slandered, clouded, and its salability has been rendered unmarketable.

53. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff does not know who the current beneficiary of their alleged Note and Mortgage actually is, such that they are now subject to "double financial jeopardy".

54. As a direct and proximate result of the actions of the Defendants set forth above, *multiple* parties can attempt to enforce Plaintiffs' alleged debt obligations.

55. The conduct of Wells and one or more of the Doe Defendants has led to imminent loss of Plaintiffs' real property and pecuniary damages.  The pecuniary damages include, but are not limited to, the delinquent amount of accrued interest on the loan, the cost of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, the cost associated with removing the cloud from his property title and attorney's fees, in an amount to be proven at trial.

56. The conduct of Wells and one or more of the Doe Defendants' conduct was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiffs' Note and Deed of Trust, yet they intentionally and fraudulently represented to Plaintiff that were the true beneficiaries of the alleged debt, Defendants kept Plaintiff in a long drawn out process in order to take advantage of fees they would charge to collect on the alleged debt by the disposition of the real property, (*which by the way is the only method that qualifies the Debt Collectors for their compensation from the United States Treasury*.) Defendant Wells covered up this defect by wrongfully recording a fraudulent Assignment, which would be enable them to *illegally and fraudulently* collect on Plaintiffs' debt, and which in essence has rendered the title the property unmarketable.

57. The title to Plaintiffs' Property has been rendered unmarketable and useable because of the possibility of multiple claims made against Plaintiffs' alleged debt obligation and the underlying security (the subject property). If the Assignment of the Deed of Trust is not cancelled and set aside, Plaintiff will be incurably prejudiced. Plaintiff will be denied the opportunity to identify and negotiate with the *true creditor* and exercise their right to verify and validate their alleged debt.

58. The Plaintiff *has not offered* to and has not submitted the unconditional tender to his alleged obligation[5] as Plaintiff has a genuine dispute against Defendants alleged claims to the beneficial interest and standing in the alleged debt/loan. The Plaintiff is informed and re-alleges that Defendants are misrepresenting their role and interest in alleged debt/ mortgage; Defendants true roles are as acting Servicer and Collectors which have intentionally misrepresented their role

---

[5] Case law makes it clear that **Plaintiff is only required to allege a credible offer of tender**, not actually tender. *Alicia v. GE Money Bank*, No C 09-00091 SBA, 2009 WL 21336969 at *3(N.D. Cal. July 16, 2009) (...debtor must allege a credible tender of the amount of the secured debt..."). Moreover, tender is *not* required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage electronic registration systems, Inc.* No.CV 11-1658 AHM, 2011 WL 25330299(C.D. Cal June 24, 2011), 148 Cal. App. 2d 558,564 (1957). See also, *Foulkord v. BANK OF AMERICA N.A. Fargo Financial California Inc.,* No. CV 11-732-GHK (AJWx)(C.D. Cal May 31,2011)("...requiring Plaintiff to tender the amount due on his loan at this time would be *illogical and inequitable* given that he disputes that BANK OF AMERICA N.A. Fargo has any rights under the loan.") In light of the fact that Plaintiff contents the legitimacy of the Defendants' claim to the mortgage payments, it would be *illogical and inequitable* to require Plaintiff to actually tender the amount given that Plaintiff disputes whether Defendants have any rights under the loan. See *Onofrio v. Rice*, 55 Cal. App. 4th 413,424(1997).

1   in order to become unjustly enriched through the disposition of the Property and the liquidation

2   of the Property.  Defendants have been/ will be enriched unjustly by their assertions on the

3   alleged debt and the disposition of Plaintiffs' Real Property through Foreclosure  if they are not

4   held to their obligations to the tax payers and the Department of Treasury by conducting a

5   detailed due diligence of the Plaintiff for a Loan modification.

### FIRST CAUSE OF ACTION-DECLARATORY RELIEF: TO DETERMINE

### STATUS OF DEFENDANTS'CLAIMS

### [28 U.S.C.§§ 2201,2202]

**[Against All Defendants and Doe Defendants]**

10   59.  The Plaintiff hereby incorporates by reference each and every one of the preceding

11   paragraphs as if the same were fully set forth herein.

12   60.  Section 2201(a) of Title 28 of the United States Code states:

13   In case of actual controversy within its jurisdiction, except with respect to Federal taxes other

14   than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding

15   under section 505 or 1146 of title 11, or in any civil action involving an antidumping or

16   countervailing duty proceeding regarding a class or kind of merchandise of a free trade area

17   country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the

18   administering authority, any court of the United States, upon the filing of an appropriate

19   pleading, may declare the rights and other legal relations of any interested party seeking such

20   declaration, whether, or not further relief is or could be sought.  Any such declaration shall have

21   the force and effect of a final judgment or decree and shall be reviewable as such.

22   61.  Section 2202 of Title 28 of the United States Code states:  Further necessary or

23   proper relief based on declaratory judgment or decree may be granted, after reasonable notice

24   and hearing, against any adverse party whose rights have been determined by such judgment.

25   62.  Plaintiff alleges that neither Wells nor NDEX have a secured or unsecured legal,

26   equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported

27   assignment has no value since the Deed of Trust is wholly unsecured.  In fact; Defendants roles

28   are solely as a Servicer and Debt Collector which is attempting to take advantage of their

1   agreements with the United States Treasury and the FDIC in order to be unjustly enriched

2   through the illegal disposition and liquidation of the Plaintiffs' property.

3       63. On or about July 5, 2006, Defendants claim they had secured enforceable interest in,

4   and perfected lien against, the Plaintiffs' Note, deed of Trust and Property.

5       64. Thus, the *competing allegations* made by Plaintiff, above, establish that a ***real and***

6   ***actual controversy*** exists as to the respective rights of the parties to this matter, including

7   ownership of the Property.

8       65. Accordingly, Plaintiff requests that the Court make a finding and issues appropriate

9   orders stating that none of the named Defendants or Doe Defendants, have any right or interest in

10  Plaintiffs' Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of

11  law, to collect Plaintiffs' mortgage payments or enforce the terms of the alleged Note or Deed of

12  Trust in any manner whatsoever.  Plaintiff also seeks the courts help in issuing orders to

13  Defendants to perform the required due diligence on the Plaintiffs' ***"Net Present value"*** as

14  stipulated by the United States Treasury guidelines for the benefit of the Tax payers as the only

15  real Investors of the alleged Note on the Debt and on behalf of the Plaintiffs' foreclosure

16  mitigation efforts.

17      66.  Plaintiff will suffer prejudice if the Court does not determine the rights and

18  obligations of the parties because: ***(1) Plaintiff will be denied the opportunity to identify their***

19  ***true and current creditor/lender and to negotiate with them;(2) They will be denied the right to***

20  ***conduct discovery and have Wells and NDEX's claims verified by a custodian of records who***

21  ***has personal knowledge of the loan and all transactions related to it; and (3) they will be***

22  ***denied the opportunity to discover the true amount they still owe minus any legal costs, fees***

23  ***and charges (4) Plaintiff will be denied their opportunity to secure a loan modification and for***

24  ***tax payers to mitigate their potential losses as the true investors.***

25      67.  Due to the actual case and controversy regarding competing claims and the

26  allegations, it is necessary that the court declare the actual rights and obligations of the parties

27  and make a determination as to whether Wells and NDEX claims against the Plaintiff are

28

1    enforceable and whether it is secured or unsecured by any right, title, or interest in Plaintiffs' real

2    property.

3         68.  Furthermore, the conduct of Defendants Wells and NDEX as their agent, and one or

4    more of the Doe Defendants, and each of them, as herein described, has been so malicious and

5    contemptible that it would be looked down upon and despised by ordinary people. Plaintiff is

6    therefore entitled to punitive damages in an amount appropriate to punish Defendants and to

7    deter others from engaging in similar conduct.

8    ## SECOND CAUSE OF ACTION - NEGLIGENCE

9    **[Against All Defendants and Doe Defendants]**

10         69.  Plaintiff hereby incorporates by reference each and every one of the preceding

11    paragraphs as if the same were fully set forth herein.

12         70.  At all times relevant herein, NDEX was acting as a purported agent for Wells Fargo

13    Bank N.A., Defendants are jointly and severally liable for NDEX's and/or Wells Fargo Banks'

14    negligent and reckless conduct.

15         71.  World Savings (which has not been in existence as of 2008) as the purported

16    beneficiary of the Note and Deed of Trust and Defendants Wells Fargo Bank N.A. as purported

17    mortgage *Servicer / Collector* and NDEX as the purported *Trustee and Collector*, all have a duty

18    to exercise reasonable care[6] and skill to follow California law with regard to enforcement of

19    monetary obligations, and to refrain from taking or failing to take any action against Plaintiff that

20    they did not have the legal authority to do. This includes not collecting or demanding mortgage

21    payments when they do not have the right to enforce the obligation, causing the Plaintiff to

22    become delinquent in his mortgage, making derogatory credit reports to credit bureaus, and

23    failing to accurately and correctly process Plaintiffs' request for mortgage assistance, and to

24    properly conduct the due diligence required for the Net Present value calculation per the United

25    States Treasury.

---

26    [6] Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App.3d 1089, 1093 (1991). However, a bank may be liable in negligence if it fails to discharge its

27    contractual duties with reasonable care. Das v. bank of Am, 186 Cal.App.4th 727,741 (2010). Additionally, a bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business

28    transaction that it knowingly aided in the commission of the tort. Id (citing *Casey v. U.S. Bank Nat. Assn.* 127 Cal. App. 4th 1138, 1144-45).

72. Wells and NDEX has a duty to exercise reasonable care and skill to refrain from taking any action against Plaintiff that they do not have the legal authority to do. As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraud of the Defendants as set forth above, the chain of title to Plaintiffs' Property has been rendered unmarketable and fatally defective and has caused Plaintiff to lose saleable title to the subject property.

73. Wells and NDEX breached that duty when they failed to follow the guidelines established requiring the proper due diligence of the Plaintiffs' application for Mortgage Assistance per the stipulated perimeters of the United States Treasuries Net Present value.

74. As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trail, including attorneys' fees and costs of bringing suit to dispute, validate, and challenge said Defendants' purported rights to enforce the Plaintiffs' alleged debt obligation.

## THIRD CAUSE OF ACTION-QUASI CONTRACT

### [Against All Defendants and Doe Defendants]

75. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

76. Defendant Wells told Plaintiff that he was not eligible for assistance after becoming delinquent on his mortgage due to a major flood for a second time, only after Plaintiff had repaired the Property and had brought the Property back to living condition did Defendant contact Plaintiff; only to attempt to foreclose on the Real Property for back payments. Wells continued to demanded monthly mortgage payments from Plaintiff while misrepresenting the fact that they were properly and accurately processing Plaintiffs application for mortgage assistance ( loan modification.) Plaintiff reasonably relied upon Wells's assertion that they are/were entitled to the benefit of Plaintiffs' mortgage payments and representations that Defendants were conducting a proper due diligence of Plaintiffs application.

77.  Wells knowingly accepted Plaintiffs' mortgage assistance application by representing themselves as the true owners of the loan (true beneficiary) and not accurately processing the application  knowing that Wells did not acquire an interest in Plaintiffs' Note, such that they could accept or approve Plaintiffs' application.  It would be inequitable for Defendants to benefit from the sale of the property through foreclosure and to be compensated for their Negligence in correct processing of Plaintiffs' application as required per United States Treasuries foreclosure mitigation guidelines.  The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.  Plaintiff asks the court to order Defendant Wells to process the application for Mortgage Assistance on behalf of Plaintiff.

78.  Plaintiff seeks restitution for any damages which were caused by Wells Fargo Banks' oversight in processing the Plaintiffs' application for Loan Modification. In addition ; NDEX WEST should not be allowed to benefit from the ongoing deception.

### FOURTH CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 2605 (RESPA)

### [Against All Defendants and Doe Defendants]

79.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

80.  The Subject Loan is a federally regulated mortgage loan and is subject to the federal Real Estate Procedures Act (RESPA) and its implementing regulation, Regulation X.

81.  On or about February,2012  Plaintiff having been served with a Notice of Trustee Sale prepared and mailed a QWR / Debt Validation to the alleged beneficiary Wells.

82.  The QWR contained information to enable Wells Fargo Bank N.A. as the purported Servicer / Collector, and other Doe defendants to identify Plaintiff's Loan and also contained requests for information of the loan, specifically the identity and contact information of the holder in due course of Plaintiff's Note, accumulated late fees and charges, and requested information to verify the validity of the alleged debt owed to the purported creditor or assignee.

83.   The Defendant Wells did not provide the contact information for the purported holder of the plaintiffs' Note, as required by [12 U.S.C. § 2605, et seq.] and [15 U.S.C § 1641]; In fact Wells stated in a letter that the requested information will not be given to Plaintiff unless a *subpoena* was issued.

84.   Because the Mortgage Loan is subject to RESPA and Regulation X, all defendants were required to comply with Section 6 of RESPA appearing at [12 U.S.C. § 2605]., Defendant violated Section 6 of Regulation X upon receipt of plaintiff's QWR by their actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of the correction; and (b) failure to protect plaintiff's credit rating upon receipt of QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in § 603 of the Fair Credit Reporting Act, [15 U.S.C. § 1681(a).]

85.   Thus, Wells violated [12 U.S.C. § 2605] and its subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages. *See* [12 U.S.C. § 2605]. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiff's loan, the costs of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on his property title and setting aside the trustee's sale, and attorneys' fees and costs, in an amount to be proven at trial, but in excess of $75,000.00.

86.   As a direct and proximate result of the violations of RESPA and Regulation X by Wells and other Doe defendants plaintiff has suffered actual pecuniary damages, including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION – VIOLATION OF

## FOR VIOLATION OF 15 U.S.C. § 1692, ET SEQ.

### [Against All Defendants and Doe Defendants]

87.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

88.  Federal law prohibits the use of any "any false, deceptive, or misleading representation or means in connection with the collection of any debt...including the false representation of...the character, amount, or legal status of any debt...and the threat to take any action that cannot legally be taken..."

89. In illegally attempting to collect on Plaintiffs' debt obligation in the manner described herein, Defendant Wells, as the purported assignee and mortgage servicer:

    a)  falsely represented the status of the debt, in particular, that it was due and owing to Defendant Wells at the time the suit was filed;

    b)  falsely represented or implied that the debt was owing to Defendant Wells as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

    c)  threatened to take action, namely engaging in collection activities that cannot legally be taken by them; and

    d)  attempted to collect on the promissory note under false pretenses; namely that Wells was assigned Plaintiff's debt when in fact they were not.

90.  Illegally collecting on alleged debts that were in default.  The "Notice of Default" was issued on September  2007, Defendants Wells attempted to collect on the alleged debt as of 2009 well after the debt had been in default.  "The Senate report emphasized the application of this section 15 U.S.C. § 1692(a) §§ 4.3.10 to mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing. In addition Defendants violated the statute by their alleged assignments being filed many months after the debt had been in default.   The Defendant's actions were illegal in their attempts to collect on the alleged debts as debt collectors claiming to be beneficiaries and creditors of the

1    alleged debt.  The Defendants have misrepresented the "*character, amount and the legal status*

2    *of the alleged debt*".

3         91.  Plaintiff now re-alleges that Defendants Wells and NDEX intentionally

4    misrepresented their role as the purported servicer and debt collector knowing full well that the

5    representation of the original lender and servicer World Savings Bank FSB,. had enabled

6    Defendants to act as debt collectors without fulfilling their required obligations on processing

7    Plaintiffs' Mortgage Assistance Application for a Loan Modification, giving Defendants the

8    opportunity to become unjustly enriched through the foreclosure and liquidation of the Real

9    Property which would qualify them for their compensation as Debt Collectors for a fee equaling

10    45% of the amounts collected.

### SIXTH CAUSE OF ACTION – VIOLATION OF

### BUS. AND PROF. CODE SECTION 17200, ET SEQ.

**[Against All Defendants and Doe Defendants]**

14         92.  Plaintiff hereby incorporates by reference each and every one of the preceding

15    paragraphs as if the same were fully set forth herein.

16         93.  Defendants' conduct, for the reasons stated herein, is in direct violation of [12 U.S.C.

17    § 2605(e), et seq.]

18         94.  Defendants' conduct, for the reasons stated herein, is in direct violation of Cal. Penal

19    Code section 532(f) (a) (4).

20         95.  Cal. Bus and Prof. Code section 17200, et seq., prohibits acts of unfair completion,

21    which means and includes any unlawful, unfair, or fraudulent business act and conduct which is

22    likely to deceive and is fraudulent in nature.

23         96.  Defendants' attempt at collecting a debt that had never been properly disclosed under

24    [15 U.S.C. § 1641], failing to notify the new assignee, owner of the purported debt within 30

25    days of such transfer or assignment.

26         97.  As more fully described above, Defendants' acts and practices are unlawful, unfair,

27    and fraudulent. This conduct is ongoing and continues to this date. *Defendants have committed*

28    *similar acts of deception in the past as confirmed by their agreement with the department of*

1 | *justice admitting to the court that they had committed acts that were not in compliance with*

2 | *law.*

3 | 98.  Defendants engage in unfair, unlawful[7], and fraudulent business practices with

4 | respect to mortgage loan servicing, and related matters by, among other things:

5 | a)  executing and recording false and misleading documents[8];

6 | b)  executing and recording documents without the legal authority to do so;

7 | c)  failing to disclose the principal for which documents were being executed and

8 |     recorded in violation of Cal. Civ. Code section 1095;

9 | d)  demanding and accepting payments for debts that were non-existent;

10 | e)  violating the Security First Rule;

11 | f)  reporting payments as late to credit bureaus without the legal right or authority to do

12 |     so;

13 | g)  acting as beneficiary without the legal authority to do so, and;

14 | h)  accepting and processing of Plaintiffs' application for assistance without proper due

15 |     diligence as required by the United States Treasury.

16 | i)  Inputting data and numbers which were / are not consistent with the correct input of

17 |     data for the purposes of calculating the Net Present value.

18 | j)  Other deceptive business practices as described herein.

19 | 99.  As more fully described above, Defendants' acts and practices are likely to deceive

20 | members of the public.

21 | 100.  Plaintiff alleges that by engaging in the above described acts and/or practices as

22 | alleged herein;  Defendants violate several laws including Cal Bus. And Prof. Code section

23 |

---

[7] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Sanders v. Superior court*, 27 Cal.4th 832(1994); *Hewlett v. Squaw Valley*, 54 Cal.4th 499(1997).

[8] Defendants' recording of the Assignment of Deed of Trust violates Cal. Penal Code section 532 (f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate that Defendants have committed mortgage fraud by filing the Assignment of Deed of Trust with the county recorder's office with the knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

101. Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

102. The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

103. By reason of the foregoing, Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. And Prof. Code sections 17203 and 17204.

104. As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiff has been injured in that the loss of his Real Property is imminent danger of being foreclosed due to Defendants intentional miscalculations and inaccurate processing of Plaintiffs Mortgage Assistance Application for a Loan Modification, also a cloud has been placed upon title to Plaintiffs' Property and Defendants have failed to remove this cloud from Plaintiff' title.

105. Plaintiff is entitled to an order compelling Wells, NDEX and any other Defendants claiming an interest in and to the Property to take any and all actions necessary to remove the cloud they have placed upon his title and an order enjoining such Defendants from taking such action again in the future.

## **WHEREFORE, Plaintiff prays as follows:**

1. For compensatory, special and general damages in an amount according to proof at trail, but not less than $5,000,000.00, against all Defendants;

2. For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3.  For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiffs' title to the Property, including the purported Assignment of Deed of Trust.

4.  For an order finding that Defendants have no legally cognizable rights as to Plaintiff, the Property, Plaintiffs' Promissory Note, Plaintiffs' Deed of Trust or any other matter based on contract or any of the documents prepared by Defendants, tendered to and executed by Plaintiff;

5.  For the Court to issue an order restraining Defendants, their agents or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

6.  For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiff and returning the same to Plaintiff's interest thereon at the statutory rate from the date the funds were first received from Plaintiff;

7.  For costs of suit incurred herein;

8.  For reasonable attorneys' fees incurred; and

9.  For such other and further relief as the Court may deem proper.

10.  For an order to compel Defendants to properly and legally conduct a due diligence by which the Plaintiff can qualify for a ***"Loan Modification".***

## **DEMAND FOR JURY TRIAL**

The Plaintiff DAVID L. PAYNE; hereby requests a jury trial on all issues raised in this complaint under the Seventh Amendment to the U.S Constitution in accordance with "Federal Rule of Civil Procedure 38."

Dated: <u>01-07-2013</u>

DAVID L. PAYNE,
Plaintiff in pro per
*Without Recourse*

## **VERIFICATION**

I, DAVID L. PAYNE, Plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, without the "United States" (federal government), that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1). See the Supremacy Clause in the Constitution for the United States of America, as lawfully amended (hereinafter "U.S. Constitution").

Dated: 01-07-2013

DAVID L. PAYNE,
*Sui Juris*
*Without Recourse*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)

DAVID L. PAYNE

**DEFENDANTS**
WELLS FARGO BANK N.A.;
NDEX WEST, LLC.; and DOES
1 THROUGH 10 INCLUSIVE

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

DAVID L. PAYNE          (951) 551-7131
31896 CORTE MENDOZA
TEMECULA, CA 92592

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No          ☑ **MONEY DEMANDED IN COMPLAINT: $** 5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C §1692-1692p, et seq., 15 U.S.C. §1641, 12 U.S.C. § 2605 , 28 U.S.C § 2201, 2202

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☑ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

ED CV 13 - 00044 VAP SPX

**FOR OFFICE USE ONLY:** Case Number: JAN -7 2013

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)          CIVIL COVER SHEET          Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or

           ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

           ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

           ☐ D. Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County , California | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | State of Delaware |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County , California | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date 1-07-2013

     **Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is Sheri Pym.

The case number on all documents filed with the Court should read as follows:

## EDCV13- 44 VAP (SPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[X] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
DAVID L. PAYNE          (951) 551-7131
31896 CORTE MENDOZA
TEMECULA, CA 92592
PLAINTIFF, IN PRO-PER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| DAVID L. PAYNE, as | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | ED CV 13 - 00044 VAP SPx |
| v. | |
| WELLS FARGO BANK N.A.; NDEX WEST, LLC.; and DOES 1 THROUGH 10 INCLUSIVE, | SUMMONS |
| DEFENDANT(S). | |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, DAVID L. PAYNE , In Pro-Per _____, whose address is 31896 CORTE MENDOZA, TEMECULA, CALIFORNIA 92592 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

TERRY NAFISI

Clerk, U.S. District Court

Dated: 1-07-2013 _____

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*